UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BROADCAST MUSIC, INC., *et al.*,

Plaintiffs,

v.

AVENUE ULTRA LOUNGE, LLC, *et al.*,

Defendants.

Case No.  2:25-cv-0998-TLN-JDP

FINDINGS AND RECOMMENDATIONS

Plaintiffs Broadcast Music, Inc., Beechwood Music Corp., Sony/ATV Songs, LLC, and Beanly, Inc. allege that defendants Avenue Ultra Lounge, LLC and Kevin Hernandez willfully violated plaintiffs' copyrights.  Defendants have not appeared.  Plaintiffs move for default judgment, seeking statutory damages, injunctive relief, and attorney's fees and costs.  For the following reasons, I recommend that plaintiffs' motion be granted in part and denied in part.

**Background**

According to the complaint, defendants violated three of plaintiffs' copyrights in an "unauthorized public performance of musical compositions."  ECF No. 1 ¶ 18.  In December 2022, plaintiffs learned that Avenue Ultra Lounge, LLC was "offering musical entertainment without a license from [plaintiffs] granting permission to publicly perform the copyrighted

1

music."[1] ECF No. 17-3 ¶ 3.  Plaintiffs "reached out to Defendants over sixty (60) times, by phone mail, and email" with cease and desist notices, as well as information about "purchasing a license for the public performance of musical compositions."  ECF No. 1 ¶ 17; *see also* ECF No. 17-1 at 3 (alleging that plaintiffs "telephoned the Defendants on thirty-five (35) occasions, sent twenty-two (22) letters, and sent seventeen (17) emails").  Despite these efforts, defendants "failed to enter into a license agreement . . . and continued to offer unauthorized public performance" of plaintiffs' copyrighted songs.  ECF No. 17-3 ¶ 8.  Accordingly, in August 2024, plaintiffs' researcher visited Avenue Ultra Lounge, LLC and recorded the public performance of three compositions owned by plaintiffs.  *See* ECF No. 1 at 8-9; ECF No. 17-3 ¶¶ 9-10.

In April 2025, plaintiffs commenced this action, bringing three claims for willful copyright infringement against defendants Avenue Ultra Lounge, LLC, Kevin Hernandez, and Kurstie Sur.[2]  *See* ECF No. 1 at 1, 8-9.  Defendants were properly served on April 4, 2025.  *See* ECF Nos. 5 & 6.  After defendants failed to timely respond to the complaint, plaintiffs requested entry of their default, ECF No. 8, which the Clerk of the Court entered on June 18, 2025, ECF No. 9.  Plaintiffs now move for default judgment and seek statutory damages, injunctive relief, and attorney's fees and costs.

## Legal Standard

Under Federal Rule of Civil Procedure 55, default may be entered against a party who fails to plead or otherwise defend against an action.  *See* Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).  Rather, the decision to grant or deny a motion for default judgment is discretionary.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising that discretion, the court considers the following factors:

---

[1] Kevin Hernandez is allegedly a managing member of Avenue Ultra Lounge, LLC and has the right and ability to supervise its activities.  ECF No. 1 ¶¶ 12-13.

[2] On August 29, 2025, plaintiffs voluntarily dismissed their claims against defendant Kurstie Sur.  *See* ECF Nos. 14 & 15.  Thus, I use the term "defendants" to refer only to Avenue Ultra Lounge, LLC and Kevin Hernandez.

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  "In applying this discretionary standard, default judgments are more often granted than denied."  *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

Generally, once default is entered, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).  However, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

**Discussion**

I.    Appropriateness of the Entry of Default Judgment Under the *Eitel* Factors

The merits of plaintiffs' substantive claims and the sufficiency of the complaint—the second and third *Eitel* factors—weigh in favor of default judgment.  To establish copyright infringement, plaintiffs must show that (1) they own the copyrights for the three songs at issue and (2) defendants performed those songs.  *See Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996).  In the complaint, plaintiffs sufficiently allege that they own the copyrights for the songs in question.  *See* ECF No. 1 at 8-9 (providing the title of the musical composition, the writer, the publisher plaintiff, the date of copyright registration, and the copyright registration number).  Moreover, in addition to alleging that these three songs were performed at defendants' business, *see id.*, plaintiffs also provide a declaration from John Flynn, the Assistant Vice President for Licensing from Broadcast Music. Inc., who states that plaintiffs' researcher visited Avenues Ultra Lounge, LLC and made an "audio recording and written report of the music being publicly

performed on the evening of August 14, 2024," *see* ECF no. 17-3 ¶ 9.  Plaintiffs reviewed the recording and verified that the three songs at issue in this action were actually performed at defendants' business.  *Id*. ¶ 10; *see also id.* at 6-14.  As such, plaintiffs sufficiently allege their claims for copyright infringement.  *See Smith*, 84 F.3d at 1218.

Similarly, plaintiffs sufficiently allege that defendants' performance of the copyrighted songs was willful.  "To prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights."  *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) (quoting *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)).  As noted, plaintiffs allegedly contacted defendants over sixty times by phone, email, and first-class mail since December 2022.  *See* ECF No. 1 ¶ 17; ECF No. 17-3 ¶ 12.  Flynn also states that plaintiffs "telephoned [defendants] on 34 occasions and on a number of those occasions spoke to persons associated with the establishment's operation."  ECF No. 17-3 ¶ 7.  At minimum, such outreach and actual contact with defendants' employees establish that defendants' violations of plaintiffs' copyrights in August 2024 "were the result of reckless disregard for, or willful blindness to," plaintiffs' rights.  *See Louis Vuitton Malletier, S.A.*, 658 F.3d at 944.

The remaining *Eitel* factors also weigh in favor of default judgment.  Defendants were properly served, ECF Nos. 5 & 6, but have not responded to the complaint.  Thus, it appears that their default was not entered due to excusable neglect.  The relief sought is authorized by statute and, accepting plaintiffs' allegations as true, there is little possibility of a dispute concerning material facts.  *See Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists.").  Additionally, because defendants have not appeared in this action, plaintiffs have no recourse for obtaining relief absent default judgment.  Finally, although decisions on the merits are favored, such a decision is impossible where, as here, defendants decline to take part in the action.  *See Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1093 (N.D. Cal. 2008).  Accordingly,

plaintiffs are entitled to default judgment on their willful copyright infringement claims.

II.    Statutory Damages

Under 17 U.S.C. § 504, a district court may award statutory damages of between $750 and $30,000 per copyright infringement.  17 U.S.C. § 504(c)(1).  Courts have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima."  *Harris v. Emus Recs. Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984). "Generally, an award of three times the average licensing fee for the [infringement] is sufficient to protect the plaintiff's rights and discourage defendants from future acts of infringement." *Eva's Photography, Inc. v. Hudson*, No. 24-cv-1879-MWF, 2024 WL 5413156, at *6 (C.D. Cal. Nov. 13, 2024) (collecting cases).

Plaintiffs request a total award of $15,000, which "is approximately three times the amount Plaintiffs would have received in licensing fees from Defendants to date had their establishment been licensed."  *See* ECF No. 17-1 at 4-5; ECF No. 1 at 5; ECF No. 17-3 ¶ 15 ("Had the defendants entered into an agreement at the time [plaintiffs] first contacted them in December 2022, the estimated license fees between December 2022 and [August 2025] would have been approximately $4,441.50.").  I find that an award of $15,000 is appropriate to compensate plaintiffs for lost profits and deter defendants' future infringements.  *See Broad. Music, Inc. v. JMN Rest. Mgmt. Corp.*, No. 14-cv-1190-JD, 2014 WL 5106421, at *3 (N.D. Cal. Oct. 10, 2014) (awarding $36,000 where plaintiff claimed that it would have received $11,112.50 if defendant had purchased the licensing agreement when it was first contacted); *Broad. Music, Inc. v. Kiflit*, No. 12-cv-0856-LHK, 2012 WL 4717852, at *4 (N.D. Cal. Oct. 2, 2012) (awarding $9,000 where plaintiff claimed that it would have received $2,806.90 if defendant had purchased the licensing agreement when it was first contacted).

III.    Permanent Injunction

Under § 502, a district court may grant a permanent injunction "as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations."  *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir.

1993).

Plaintiffs seek a permanent injunction restraining defendants from performing any copyrighted songs licensed by plaintiffs. *See* ECF No. 17-1 at 6; ECF No. 1 at 5. In light of the allegations that defendants have continued to violate plaintiffs' copyrights even after plaintiffs sent cease and desist notices and initiated this action, I find that a permanent injunction is appropriate. *See JMN Rest. Mgmt. Corp.*, 2014 WL 5106421, at *3 (granting a permanent injunction because "[t]he fact that defendants have continued to violate plaintiffs' copyrights despite years of warnings suggests that, absent an injunction, they will go on doing so—a conclusion bolstered by the fact that the defendants have not responded to plaintiffs' allegations in this Court"). Moreover, an injunction will not impose a hardship on defendants because it will be "narrowly tailored to prohibit only future infringing behavior." *See Kiflit*, 2012 WL 4717852, at *3.

IV.    Attorney's Fees and Costs

Under § 505, a district court may award reasonable attorney's fees and costs to the prevailing party. 17 U.S.C. § 505. To determine the reasonableness of attorney's fees, courts use the lodestar method, whereby "a district court must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). "The Supreme Court has consistently held that reasonable fees are to be calculated according to the prevailing market rates in the relevant community," *Van Skike v. Dir. Off. Of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009), and not "by reference to rates actually charged the prevailing party," *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). The party seeking fees has the burden "to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Plaintiffs seek $22,899 in attorney's fees and $1,001.15 in costs. *See* ECF No. 17-1 at 7; ECF No. 1 at 6. The requested attorneys' fees are based on approximately 22.3 hours of work

6

performed by two attorneys at hourly rates of $475 and $1,290.  ECF No. 17-2 ¶¶ 7-8.  Plaintiffs' counsel contends that the hourly rates sought are "presumptively reasonable."  ECF No. 17-2 ¶ 6. Counsel, however, provides no evidence or authority showing that the hourly rates sought are in line with rates in the Eastern District of California for work of similar complexity by attorneys with comparable experience.  Instead, counsel relies on the "locality payment" for the "San Jose-San Francisco-Oakland area" based on data from the U.S. Office of Personnel Management and the U.S. Department of Justice.[3]  *See id*.  Plaintiffs therefore have failed to satisfy their burden of demonstrating that the requested rates are reasonable.  *See Jordan v. Multnomah Cnty*, 815 F.2d 1258, 1263 (9th Cir. 1987) ("The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.").

Moreover, plaintiffs seek fees for counsel's hours that appear to have been spent on clerical work.  The Ninth Circuit has explained that "[i]t simply is not reasonable for a lawyer to bill, at her regular hourly rate, for tasks that a non-attorney employed by her could perform at a much lower cost."  *Davis v. City & Cnty of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1993). Plaintiffs' counsel, Samuel Jubelirer, seeks fees for: 1.8 hours when he "[p]repared complaint and accompanying documents for filing;" 0.9 hours when he "[r]esolved issue with attachments to complaint;" 0.2 hours when he "[d]rafted magistrate consent form;" 0.3 hours when he called and left voicemails "with defendants regarding answer deadline;" 0.4 hours when he "[d]rafted letter to [defendants] regarding potential default;" 2 hours when he drafted the request for entry of default; 0.1 hours when he "[r]eviewed clerk's entry of default;" 0.3 hours in connection with the court's order reassigning this action to the district judge; and 3.3 hours when he drafted the instant motion and supporting declarations.  *See* ECF No. 17-2 at 15, 19, 23 30, 33, and 37. Many of these tasks could have been completed by clerical staff.  *See Reyna v. Astrue*, No. 1:09-cv-0719-SMS, 2011 WL 6100609, at * 2 (E.D. Cal. Dec. 6, 2011) (finding that time billed "to

---

[3] It also bears mention that while plaintiffs' counsel, Samuel Jubelirer, maintains that his hourly rate should be $1,290, he also states that his calculation yielded "a presumptively reasonable hourly rate of $863."  *See* ECF No. 17-2 ¶ 6.  Counsel does not explain this discrepancy or how he determined the $1,290 hourly rate.

prepare, review, and electronically file the complaint, IFP, and related documents was work reasonably to be performed by an experienced legal secretary"). While counsel would, of course, need to spend some time reviewing documents before submission, the hours included in plaintiffs' request appear to be excessive.

Lastly, plaintiffs seeks fees for time counsel expended in relation to defendant Kurstie Sur. As noted, plaintiffs voluntarily dismissed their claims against Kurstie Sur. *See* ECF Nos. 14 & 15. Nonetheless, they seek fees for over three hours of Jubelirer's work on legal issues involving Sur. *See* ECF No. 17-2 at 15, 19-20, 23, and 37. Plaintiffs do not explain why defendants must pay attorney's fees for work regarding another defendant whom they voluntarily dismissed. Indeed, it appears that plaintiffs are not entitled to such fees. *See Cataphora Inc. v. Parker*, 848 F. Supp. 2d 1064, 1070 (N.D. Cal. 2012) (reducing hours requested by the plaintiff for work associated with a defendant who was voluntarily dismissed).

In light of these deficiencies, plaintiffs' request for attorney's fees and costs should be denied without prejudice to renewal upon an appropriate motion filed in compliance with Local Rules 292 and 293.

Accordingly, it is hereby RECOMMENDED that:

1. Plaintiffs' motion for default judgment, ECF No. 17, be GRANTED in part and DENIED in part.

2. The court enter judgment against defendants Avenue Ultra Lounge, LLC and Kevin Hernandez in the amount of $15,000 in statutory damages.

3. Defendants, their agents, servants, employees, and all persons acting under their permission and authority, be enjoined and restrained from infringing, in any manner, the copyrighted musical compositions licensed by Broadcast Music, Inc.

4. Plaintiffs' request for attorney's fees and costs be denied without prejudice to renewal upon a timely motion filed in compliance with Local Rules 292 and 293.

5. The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days of

8

service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within fourteen days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    April 27, 2026          _____

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE